## SCHIMKE v. SCOTT.

1. FRAUD—DEPOSITION.

   Reception in evidence of deposition of person to whom defendants had related details as to how they had defrauded plaintiff when they sold her their business of making articles from plaster and distributorship of certain paints *held,* not reversible error in suit for rescission and recovery of sum paid therefor.

2. SAME—SALE OF BUSINESS—COURT'S COMMENT ON DEFENDANT HUSBAND'S FAILURE TO TAKE STAND.

   Record in suit to rescind contract for sale of business of making articles from plaster and distributorship of certain paints *held,* to sustain trial court's finding that plaintiff had clearly established defendants, husband and wife, had fraudulently induced plaintiff to purchase the business and that trial court's comments relative to the defendant husband's failure to testify either to deny statements attributed to him or to corroborate his wife's testimony were merely an additional reason for finding for plaintiff.

3. SAME—RESTORATION—ALLOWANCE FOR NONRESTORED ITEMS.

   The right to rescind a contract because it was fraudulently induced required the defrauded party to restore what he or she has received, with allowance for any part that cannot be restored.

Appeal from Muskegon; Beers (Henry L.), J. Submitted October 12, 1960. (Docket No. 75, Calendar No. 48,420.) Decided December 1, 1960.

Bill by Margaret Schimke against James W. Scott and Ruth Scott, doing business as Scott's Plaster-

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Depositions § 123.
[2] 24 Am Jur, Fraud and Deceit § 279.
[3] 46 Am Jur, Sales § 775.

craft, to rescind sale of business and recover purchase price paid therefor. Decree for plaintiff. Defendants appeal. Affirmed.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for plaintiff.

*Schmidt, Smith, Howlett & Halliday,* for defendants.

KELLY, J. Plaintiff filed her bill of complaint (April 24, 1956) to rescind a contract for the sale of a business and to recover money paid.

The circuit judge for the county of Muskegon entered a decree (August 10, 1959) finding that "plaintiff has clearly established by the evidence that the defendants made false and fraudulent representations to induce the plaintiff to purchase from them the business known as 'Scott's Plastercraft' " and that plaintiff was entitled to recover $5,180 from defendants.

In November, 1954, defendants (husband and wife) were engaged, at Coopersville, Michigan, in the business of making certain articles from plaster, called plastercraft, under the business name of "Scott's Plastercraft," and were the distributors of "Helen's Rainbow Paints."

Plaintiff testified she went to defendants' home to purchase plastercraft items for a church bazaar and that defendant Ruth Scott informed her that ill health required her to dispose of the business and move to California; that she had a volume of business as she was known all over the State of Michigan; that for $5,000 she would sell to plaintiff the fixtures, molds, tools, supplies, trade secrets, list of customers, and everything belonging to and being the entire business of Scott's Plastercraft.

Plaintiff testified that on November 15, 1954 (1–1/2 weeks after her first visit), she went back to defendants' home and made the initial payment of $3,500; that defendant Ruth Scott informed her that both her husband and herself had agreed that plaintiff had lost $600 worth of business by her delay in consummating the purchase; that at the time plaintiff made the payment of $3,500 she remarked that she would have to make a go of the business because of the size of her investment and defendant Ruth Scott replied, " 'Oh, you will have no one competing with you.' "

Plaintiff made the final payment of $1,500 on November 26, 1954, and received from defendants personal property and equipment represented to have a value of $800, the Scotts' secret formula for making plastercraft, and what purported to be a complete list of customers.

Plaintiff started her suit for fraud after reading an article in the Muskegon Chronicle (April 5, 1956) that the defendants, Mr. and Mrs. Scott, were manufacturing plaster figurines and other novelties in their new building north of Coopersville, that "they manufacture 1,000 articles themselves, and also handle another 500 from outside sources" and that the business was a continuation of the business defendants had started 12 years before in their home.

Plaintiff introduced testimony to sustain her allegations of fraud in the bill of complaint that:

"The defendants had no intention of discontinuing the business of Scott's Plastercraft by reason of the ill health of the defendant, Ruth Scott, or for any other reason; that the business and assets of Scott's Plastercraft had little, if any, intrinsic value, and any value to a purchaser thereof would be dependent upon defendant's turning over to the purchaser the trade secrets, lists of customers, discontinuing business, and actually referring to the purchaser

prospective purchasers of the products of the business; that the defendants actually turned over to the plaintiff only a partial list of the customers of the business, and withheld and concealed from plaintiff other assets of the business to which she became entitled by the purchase agreement; that defendants never actually discontinued such business except for a brief period while they were on a trip to California; that defendants never intended to refer to plaintiff any of their customers, or to do anything to promote plaintiff's business, and that defendants never referred any of their customers to plaintiff, but, as plaintiff is informed and believes, immediately after their return from the aforesaid trip, resumed business in the same manner and even to a greater extent with their former customers; and that defendants made no effort to have the plaintiff made the distributing agent for Helen's Rainbow Paints, and never intended to make any such effort."

Defendants denied all of plaintiff's claims of fraud and claimed that the business known as Scott's Plastercraft was the sole and separate business of defendant Ruth Scott and that the business of distributing paint for Helen's Rainbow Paints was the sole and separate business of defendant James Scott; that James Scott was present while some of the negotiations were transpiring between plaintiff and defendant Ruth Scott but did not participate in such negotiations; that defendant Ruth Scott did not encourage plaintiff to purchase the business but, in fact, attempted to discourage her and deliberately set the price at $5,000 thinking plaintiff would refuse to proceed further; that there was no effort made to sell the business "but that plaintiff negotiated to be taught the skill of defendant Ruth Scott in preparing figurines, plaques and novelties from plaster, to acquire molds and equipment which were used at defendants' home to conduct the business and to se-

cure access to certain of defendant Ruth Scott's customers."

Appellants present the question: "Was the deposition of Helen Pfleider properly received as evidence in this matter?" and call attention to the court's reference to this deposition in its opinion as follows:

"The defendants' contention is further refuted by the testimony of one Helen Pfleider, whose deposition is on file and was introduced in evidence. Witness Pfleider is a manufacturer of paints used in decorating the merchandise sold by the defendants. She testifies that very shortly following this sale she had a booth at a national hobby show, that both defendants occupied this booth with her during the show, and that they discussed the sale they had just made of their business to the plaintiff. She testifies that Mr. Scott and Mrs. Scott told her that while they had sold the business to the plaintiff and had promised not to continue in the business, that they nevertheless intended to do so, and she states that they were elated over the deal they had made and also the fact that they had apparently misinformed the plaintiff as to the proper method of making these products. I will quote only one answer in the deposition as follows:

'"While they told us they had promised not to make figurines, they were continually taking orders during this show, showing samples of their plaster and taking orders for them. This they did in our booth at this national trade show very openly. Mr. and Mrs. Scott told my husband and I and our daughter, Marlys, that Mrs. Schimke had come with $3,000 cash and they had just kept on insisting until they got $5,000 cash for the business and Mr. Scott said he hadn't turned over all the customers to her as he had promised and he expected to continue doing a good business. I think the reason for his bragging was that he wanted to assure us that he would continue with a good figurine business thus enabling him to sell lots of our paints.' "

Appellants claim that the deposition was so filled with incompetent matter, improper conclusions, baseless accusations, and deliberate falsehood that it had no probative value, and further state:

"The written interrogatories taken of Helen Pfleider had little, if any, more probative value than would an affidavit. As a practical matter, it was impossible for counsel for the defendants to anticipate what the responses of the witness might be. It was the duty of the plaintiff to reduce the deposition to proper form at the time of submission of it to the court for consideration. It was not the duty of the defendants, when faced by a glorified affidavit, to go to the expense of taking a more formal deposition to counteract the effect of the affidavit."

We see no reversible error in the introduction in evidence of the deposition of Helen Pfleider.

Appellants claim the court erred in considering the failure of defendant James Scott to testify, as evidenced by the following from the court's opinion:

"It seems to me significant that during the entire trial of this case the defendant Mr. Scott sat at the counsel table and assisted counsel in the trial of this case, that many of the allegations of fraud relating to conversations had between the parties, to statements made by both Mr. and Mrs. Scott, and other testimony relating to the entire transaction include Mr. Scott as an active participant yet he did not take the witness stand to testify either to deny any of the statements attributed to him or to corroborate his wife's testimony. No testimony or evidence was offered that Mr. Scott is in ill health and that taking the witness stand would be too much of a physical strain for him or anything of that kind. No excuse for his not testifying is offered. The only legitimate inference I can draw therefrom is that his failure to testify is because he could not truthfully deny the charges plaintiff makes."

Defendants claim there was adequate explanation in the record for not placing Mr. Scott on the stand; that if plaintiff's counsel was so certain that Mr. Scott was a participant in the so-called fraud he could have called Mr. Scott to the stand as his own witness, and "furthermore, in making his analysis, the trial court has obviously overlooked the rule of law that the burden is upon the plaintiff to prove her case by a preponderance of the evidence."

The record sustains the court's finding "that plaintiff has clearly established by the evidence that the defendants made false and fraudulent representations to induce the plaintiff to purchase", and we conclude that the comments as regards defendant James Scott's failure to testify were merely an additional reason for the finding for the plaintiff.

Appellants also question the decree because plaintiff did not and could not place defendants *in statu quo* before seeking to rescind the contract. The decree provided:

"Plaintiff is in a position to place the defendants *in statu quo* except as to her inability to return to them certain articles which were broken in transit and certain other articles which were sold by plaintiff prior to her discovery of the fraud, and that an allowance of $800 therefor would be more than ample; that defendants jointly received from plaintiff the sum of $5,000 and jointly they should be required to return that amount to her less the aforesaid sum of $800; and that as of the date hereof, plaintiff is entitled to recover from the defendants the sum of $5,180, being the sum of $4,200 with interest thereon at the rate of 5% per annum from the date upon which plaintiff paid to defendants the purchase price of the business."

The right to rescind requires the defrauded party to restore what he or she has received, with allowance for any part that cannot be restored. See *Kundel*

v. *Portz,* 301 Mich 195, and *Zadel* v. *Simon,* 221 Mich. 180.  Also *Richardson* v. *Messina,* 361 Mich 364, 369..

We find no reason for reversing the decree.  Affirmed, with costs to appellee.

DETHMERS, C. J., and CARR, SMITH, BLACK, ED-WARDS, KAVANAGH, and SOURIS, JJ., concurred.