Heffernan, J.
 

 The plaintiff alleged in his complaint that there was fraud in the 1964 agreement, and he therefore asked that that agreement be adjudged rescinded and annulled. The trial court concluded that the plaintiff was right in his contention and, on the basis of fraud, set aside the 1964 agreement. The trial court, however, held that the setting aside of the 1964 agreement revived the agreement of 1963. The plaintiff objects to this portion of the judgment, for the 1963 agreement acknowledged in substance that the plaintiff had relinquished shop rights
 
 [2]
 
 to his employer. He
 
 *608
 
 argues that the 1964 agreement was a novation, which completely extinguished the previous agreement. Rather than a novation, however, it appears that this was a new contract which was intended to replace the 1963 agreement and, had it been valid, would have discharged the obligations of the earlier contract. Since this agreement in 1964 has been found to be a nullity and both of the parties to this appeal agree that it was properly set aside, the rights under the 1963 agreement have not been extinguished.
 

 As this court has previously said:
 

 “To rescind a contract is to annul the contract and restore the parties to their relative positions which they would have occupied if no such contract had ever been made.”
 
 First Wisconsin Nat. Bank v. Pedley
 
 (1932), 208 Wis. 628, 635, 242 N. W. 512. Generally, see 17A C. J. S., Contracts, p. 552, sec. 440, and 17 Am. Jur. (2d), Contracts, p. 1002, sec. 516.
 

 Another standard textbook on the subject has stated the general rule to be:
 

 “. . . the substituted contract may itself be voidable for fraud, infancy, or other reasons; and if the power of avoidance is exercised, the avoided contract is nullified both as an executory contract and as a discharge. The prior claim then becomes again enforceable.” 6 Corbin, Contracts, p. 196, sec. 1293.
 

 The trial court properly concluded that the 1963 agreement must be considered viable upon the demise of the 1964 agreement. The facts show that the Shovelveyor was not conceived or originally manufactured on the premises of Onley Corporation or the Shovelveyor Corporation. However, for reasons best known to the plaintiff, he elected to
 
 *609
 
 acknowledge that shop rights were vested in the Onley Corporation. He agreed that, in the 1963 contract, Onley Corporation had the right to fabricate the device, and that it assisted in the development and the financing of Shovel-veyor.
 

 Having, at least by implication, acknowledged that Onley Corporation could properly exercise its shop rights, the plaintiff will not now be heard to impeach his own prior agreement.
 

 While the courts traditionally have favored inventors as a class particularly beneficial to society, they nevertheless can contract away their rights. The United States supreme court has said:
 

 “Inventors are a meritorious class. They are public benefactors. They add to the wealth and comfort of the community, and promote the progress of civilization.”
 
 Consolidated Fruit-Jar Co. v. Wright
 
 (1876), 94 U. S. (4 Otto) 92, 96, 24 L. Ed. 68.
 

 Clearly, Spellman in this case contracted away whatever rights the law might otherwise have reserved to him as an inventor.
 

 There is no substantial dispute in regard to the initial use of the name of “Shovelveyor.” Plaintiff Spellman states that this was one name, among others, that he had considered prior to the time that he commenced employment with Onley Corporation. However, he first proposed it while working for the Onley Corporation. When this proposal met the approval of Mr. Ruhde, Spellman stencilled the name on the device that was being manufactured by Onley, and subsequent sales were made under that name. There is no evidence to the contrary, and, ' in any event, the court’s finding that the name, “Shovelveyor,” was first used under these circumstances is a finding of fact which this court will disturb only if it is contrary to the great weight and clear
 
 *610
 
 preponderance of the evidence.
 
 Kirchen v. Gottschalk
 
 (1965), 26 Wis. (2d) 123, 126, 131 N. W. (2d) 885. This finding must be sustained.
 

 The court found that the assignment of the patent rights for the Shovelveyor was predicated on the existence of the 1964 agreement. Since that agreement is a nullity, the assignment of the patent also is a nullity. However, the facts clearly show that Spellman did nothing to secure the patent in his own name. He, in fact, assumed that what he had devised was not of such novelty as to be patentable. However, Mr. Urso of Shovelveyor Corporation thought otherwise, and, at the expense of Shovelveyor Corporation, caused a patent search to be made and, eventually, due to the efforts of Urso and the work of the patent attorney hired by Shovelveyor Corporation, the application for patent was granted. The trial court properly held that, under these circumstances, it would be inequitable for the plaintiff to receive the patent which had been secured, not through his own efforts or his own expense, but at the expense of Shovelveyor Corporation, unless he were willing to at least reimburse Shovelveyor Corporation for these costs.
 

 We conclude that the trial court did not abuse its discretion in directing that the assignment back of the patent be conditioned on the payment of the expenses for the patent application.
 

 The defendants, however, maintain that the plaintiff has at this juncture lost his right to acquire the patent, because he neither paid the attorney fees within the sixty days set by the court nor filed an undertaking pursuant to sec. 274.23, Stats., to suspend the execution of the judgment. Sec. 274.23, upon which the respondent relies, provides:
 

 “If the judgment appealed from direct the doing or not doing of any other particular act or thing, and no express provision is made by statute in regard to the undertaking to be given on appeal therefrom, the execution thereof shall
 
 *611
 
 not be stayed by an appeal therefrom unless an undertaking be entered into on the part of the appellant . . . .”
 

 The judgment in this case, however, does not direct that the plaintiff do a particular act or thing. Rather, it directs the defendant to do a particular act or thing, namely, to assign the patent rights in the event the plaintiff seeks to exercise his option. It appears, therefore, that the situation envisaged by sec. 274.23, Stats., is not present in the portion of the judgment we are here considering. Our court has long taken the position that it is the established common-law rule that, in the absence of a specific statutory provision to the contrary, a properly taken appeal from one tribunal to another stays the proceedings below.
 
 Slabosheske v. Chikowske
 
 (1956), 273 Wis. 144, 153, 77 N. W. (2d) 497;
 
 David Adler & Sons Co. v. Maglio
 
 (1929), 198 Wis. 24, 28, 223 N. W. 89;
 
 Hedberg v. Dettling
 
 (1929), 198 Wis. 342, 344, 224 N. W. 108. Generally, see 4A C. J. S., Appeal and Error, p. 423, sec. 627.
 

 We conclude, therefore, that the sixty-day period within which the judgment gave the plaintiff the option to act was tolled by the filing of the appeal.
 

 The plaintiff in his reply brief contends for the first time that, even though it be held that Onley Corporation acquired shop rights to this device by the 1963 agreement, the Shovelveyor Corporation could not acquire these rights, since shop rights are personal and not subject to assignment.
 

 This court has long adhered to the rule that we will not consider matters that are raised for the first time on appeal and have not been presented to the trial court.
 
 Berning v. Giese
 
 (1957), 274 Wis. 401, 403, 80 N. W. (2d) 270. Because this question is presented for the first time on appeal, we are not obliged to decide the question. We note, however, that the defendants cite cases in 61 A. L. R. (2d) 356, which hold that, although shop rights are not assignable, they nevertheless do pass to a successor corporation.
 

 By the Court.
 
 — Judgment affirmed..
 

 [2]
 

 Shop rights are defined in 35 Am. Jur., Master and Servant, p. 523, sec. 95, as follows:
 

 “Under the ‘shop right’ rule, an employee who, during his hours of employment and while working with his employer’s materials and appliances, or with the assistance of helpers provided by the employer, conceives and perfects an invention which he patents
 
 *608
 
 must accord to his employer a right or license to use the invention.” Note that shop rights generally do not give the employer the title to a patent that the employee may have received. See
 
 Barlow & Seelig Mfg. Co. v. Patch
 
 (1939), 232 Wis. 220, 226, 286 N. W. 577.