TRAVELERS INSURANCE COMPANY *v.* CAREY

1. CONTRACTS—RESCISSION—STATUS QUO.

 Rescission of a contract abrogates it from the beginning and restores the parties to the relative positions they would have occupied if the contract had never been made, so that where a contract which annuls or modifies another is rescinded, a party may resort to his rights under the original contract.

2. INSURANCE—CONTRACTS—RESCISSION—STATUS QUO.

 Rescission of a second insurance policy because of material misrepresentations made without fraud or moral turpitude entitled the insured to assert his rights under an original policy which the second policy replaced, including the running of a two-year incontestability provision inserted in the original policy as required by law.

3. INSURANCE — INCOME PROTECTION — SUCCESSIVE POLICIES — CONTRACTS — RESCISSION — STATUS QUO.

 Rescission of a second successive income protection policy for material misrepresentations in the insured's policy application did not extinguish insured's first income protection policy where the insured was entitled to be restored to his *status quo* as a condition of rescission, and the *status quo* required reinstatement of his first policy, including the running of the two-year incontestable period; consequently, the trial court erred in holding that the insurer was not required to reinstate the first policy but had only to return premiums paid on the second policy.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 February 5, 1970, at Grand Rapids. (Docket No. 7,434.) Decided May 28, 1970.

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contracts §§ 482, 501, 512, 516.
[2, 3] 17 Am Jur 2d, Contracts §§ 512, 516.
 43 Am Jur 2d, Insurance §§ 397, 403, 447.

Complaint by Travelers Insurance Company against Daniel E. Carey for rescission of income protection insurance policy. Cross-complaint by defendant for enforcement of prior income protection policy. Judgment for plaintiff. Defendant appeals. Reversed and remanded.

*Wheeler, Upham, Bryant & Uhl,* for plaintiff.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley,* for defendant.

Before: HOLBROOK, P. J., and DANHOF and ROOD,* JJ.

HOLBROOK, P. J. This case involves two successive income protection policies issued in 1961 and 1963, respectively, by plaintiff, The Travelers Insurance Company, a Connecticut corporation, hereinafter referred to as Travelers, to defendant, Daniel E. Carey. In December, 1963, defendant filed a claim for benefits under the 1963 policy and thereafter Travelers, on the basis of false and material misrepresentations contained in defendant's policy application, brought suit in Kent County Circuit Court January 28, 1965, seeking (1) rescission of the 1963 policy and (2) a permanent injunction restraining defendant from proceeding to enforce said policy of insurance. Defendant Carey filed a cross-complaint seeking (1) damages for failure of Travelers to pay benefits under the 1963 policy; (2) reformation of the 1963 policy application and enforcement of said policy; or (3) enforcement of the 1961 policy and recovery of accrued benefits as therein provided.

Trial in the present action proceeded before the late Honorable Claude Vander Ploeg but was not

---

* Circuit judge, sitting on the Court of Appeals by assignment.

decided prior to his untimely death.    Defendant brings this appeal from the decision and judgment in favor of Travelers, entered by the Honorable John H. Vander Wal, to whom the case was assigned for decision on the record.

In 1961 defendant Carey made application with Travelers Insurance Company for disability insurance.    Travelers' agent, Wendell Smith, recorded on the application form defendant Carey's answers to the questions therein contained.    Pursuant to the application as completed, Travelers issued to defendant, effective October 1, 1961, an Executive and Professional Income Protection policy, number NCD (3)–27, providing for a monthly benefit in the amount of $150, payable during any period of "total disability", defined as "inability of the insured to engage in any and every occupation or employment for wage or profit for which he is qualified or may reasonably become qualified", caused by "sickness" or "injuries" as defined in the policy.    Coverage to the insured was for a term of six months, renewable at the option of the insured upon payment of the premiums.    Premium payments were made quarterly by defendant Carey under the 1961 policy, the last quarterly premium being paid for the quarter ending December 31, 1962.    Prior to January 1, 1963, Mr. Smith informed defendant Carey of the impending availability of a more comprehensive policy of disability insurance.    Defendant, after conferring with Mr. Smith, on January 25, 1963, applied for a new disability policy increasing coverage to $250 per month to replace the 1961 policy.    Defendant Carey, in accordance with Travelers' standard procedure, on January 30, 1963, returned the 1961 policy to its agent, Mr. Smith, who then dated the 1963 policy application as previously subscribed by defendant. The premium was paid by defendant and a new

policy, number NCD(3)–244, was issued effective February 1, 1963. Mr. Smith testified that he tried to see to it that defendant Carey would be continuously insured for disability.

The first quarterly premium on the 1963 policy was $43.50; however, defendant paid $50.51, and it was understood between the agent and defendant that the excess amount was for the premium on the 1961 policy for the month of January, 1963.

The 1961 and 1963 disability insurance policies issued to defendant were identical except that the 1963 policy required larger premium payments, and provided for an increased monthly benefit and life-time indemnity for total disability. Both policies required a waiting period, consisting of the first 28 days of any period of total disability, after which payments would commence. In addition, each policy contained an exclusionary clause which stated in part:

"[N]o payment shall be made for or on account of, any loss which is caused by or results from
* * *

"(1) sickness or disease or physical condition which manifests itself prior to 14 days after the policy date, or injuries occurring prior to the policy date. (This exclusion is subject to the policy provision captioned 'Incontestable');  * * * * "

Under the heading "Incontestable" each policy contained the following clause:

"(a) After this policy has been in force for a period of two years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application."

The record shows that, at the time defendant Carey made claim for total disability benefits under the

1963 policy in December, 1963, he had, under the 1961 policy, certain vested valuable interests, by reason of its having been issued effective October 1, 1961, *viz.*: the expiration of the periods during which Travelers could assert (1) the 14-day exclusionary clause and (2) the 2-year incontestable clause.

The testimony revealed that it was Travelers' agent, Mr. Smith, who suggested to defendant that he replace his coverage under the 1961 policy with that of an entirely new policy, without discussing with defendant the possible disadvantages to him from so doing. Mr. Smith testified in part:

"*Q.* But there was no discussion between you and Mr. Carey about any lapse of coverage if he surrendered this policy, and took another policy?

"*A.* I don't recall any such conversation with him.

"*Q.* Did you discuss with him at all, at the time of taking his application for this policy, that his incontestable period under the policy would start to run all over again?

"*A.* No, sir. In fact, I might have said the opposite.

\* \* \*

"*Q.* And, according to plan and design, then, there was no time when Carey was not insured, as far as you were concerned, under one or the other of the Travelers policies?

"*A.* That is true, with the possible exception of this 14 days.

\* \* \*

"*Q.* Did you explain to Carey if he got sick during that 14-day period, he would not have any insurance?

"*A.* I don't recall it.

\* \* \*

"*Q.* If the old policy had simply stayed in force, that is the 1961 policy for $150 a month, there would

not have been any 14-day delay in February, 1963,
would there?

"*A.* That is true.

\* \* \*

"*Q.* Now, wouldn't you say, as a man skilled and
experienced in insurance, that if Carey gave up a
policy that had a 2-year incontestable period on it,
at a time when 15 months of that period had expired,
that he was giving up a valuable right?

"*A. Yes, he would be.*

\* \* \*

"*Q.* . You did recite on the (1963) application, the
policy, Exhibit No 1, was a replacement?

\* \* \*

"*A.* Yes, there is a question in all of these applica-
tions as to replacements of any policies, and this
application answer was that this replaced the previ-
ous policy." (Emphasis supplied.)

The 1963 policy was a replacement for that issued
to defendant Carey in 1961. It is clear from the
record that the 1963 policy in fact encompassed the
first policy within its terms, since the 1963 policy
provided coverage of $150 per month, as did the
1961 policy and, additionally, provided $100 per
month increased coverage over the 1961 policy, for a
total of $250 in monthly benefits. Travelers' agent
chose to write a new policy for defendant Carey in
1963 although the company could have allowed de-
fendant to retain the 1961 policy. with the vested
rights which had accrued to him under that policy,
while issuing, in addition thereto, the second policy
with monthly benefits of $100.

Defendant's counsel conceded that certain of the
answers given by defendant in the 1963 policy appli-
cation were inaccurate. Both parties agreed, how-
ever, that no fraud or moral turpitude on the part
of defendant was in issue but, rather, that the mis-
statements by defendant while not intentionally made

to deceive, were material and affected Travelers' acceptance of the risk and the hazard assumed by issuing the 1963 policy. Defendant asserts that while Travelers was, upon the basis of such false statements, entitled to rescission of the 1963 policy, pursuant to CLS 1961, § 500.2218 (Stat Ann 1970 Cum Supp § 24.12218), that upon rescission of the 1963 policy the 1961 policy was still operative.

The issue to be determined is restated as follows:

*Where the insurer issued to the insured two successive income protection insurance policies, the second replacing the first, and thereafter obtained rescission of the second policy, is the insured entitled to the benefits and terms of the first policy under the law of restitution which considers the first contract as being operative and not extinguished?*

The trial court made the following conclusions of law:

"1. That Travelers is entitled to rescission of the 1963 policy, Exhibit 1.

"2. That in connection with rescission of said policy, Travelers is obliged to restore its insured, Daniel E. Carey, only to the benefits that the insurance company received up to that time, namely: the payment of the premiums and interest thereon.

"3. That rescission does not restore to Daniel E. Carey the 1961 policy.

"4. Due to the conclusion of law set forth above in paragraph number 3, it is unnecessary for the Court to decide what effect a restoration of the 1961 policy would have in relation to the two-year incontestable clause. However, if the 1961 policy was restored by reason of the rescission, the Court would hold that rescission is of in [*sic*] *ab initio,* namely January 31, 1963, and the same applies to the insurance company restoring their rights to their two-year incontestable clause which still had nine months to run."

Travelers, in support of the ruling of the trial
court, asserts that, while a party seeking rescission
of a contract must return, or offer to return, what it
has received under the rescinded contract, citing 5
Williston, Contracts (Rev ed), § 1530, p 4292, Travel-
ers received only premiums under the 1963 policy,
as the trial court held; that Travelers is not required,
as a condition of rescission, to restore to defendant
the 1961 policy; that if the 1961 policy is to be
reinstated, its incontestable clause must likewise be
reinstated since, as the trial court found, the clause
had several months yet to run at the time of issuance
of the replacement policy February 1, 1963; and
further, that the 1961 policy must then be declared
rescinded for the claimed misrepresentations con-
tained in the 1961 policy application.

The general rules governing the law of rescission
are stated in 17A CJS, Contracts, § 440, pp 551, 552:

"Generally speaking, rescission abrogates the con-
tract not partially but completely, from the begin-
ning, for all purposes; and, after a binding election
to rescind, a party cannot insist on rights thereunder,
but each of the parties is returned to his previously
existing rights. So, where a contract which annuls
or modifies another is rescinded, *the party may re-
sort to his rights under the original contract.*" (Em-
phasis supplied).

The rules applicable to rescission of contracts in
Michigan are dealt with in (1) the case of *Wall* v.
*Zynda* (1938) 283 Mich 260, 264, wherein the court
adopted the following statement from 1 Black on
Rescission and Cancellation (2d ed), § 1, pp 3, 4:

" 'To rescind a contract is not merely to terminate
it, but to abrogate and undo it from the beginning;
that is, not merely to release the parties from further
obligation to each other in respect to the subject of
the contract, but to annul the contract and restore

the parties to the relative positions which they would have occupied if no such contract had ever been made. Rescission necessarily involves a repudiation of the contract and a refusal of the moving party to be further bound by it. But this by itself would constitute no more than a breach of the contract or a refusal of performance, while the idea of rescission involves the additional and distinguishing element of a restoration of the *status quo.*' ";

and (2) *Schimke* v. *Scott* (1960), 361 Mich 654, which involved a single contract.

We gain further light on the subject from the case of *Indiana Flooring Co.* v. *Grand Rapids Trust Co.* (CA6, 1927), 20 F2d 63 at page 65 wherein the court stated:

"It is undoubtedly the law that, if a void or voidable contract is substituted for a valid preexisting obligation and the substituted contract is later rescinded, because void or voidable, the preexisting valid contract is restored, as if nothing had happened."

Under the facts in this case, defendant would be entitled to credit on the 1961 policy premiums for that money paid to Travelers on the rescinded 1963 contract.

The incontestable clause in the 1961 contract was inserted therein as required by law. This provision is not frowned upon by the courts nor is it contrary to public policy. It provides for a definite date after which a policy of insurance cannot be contested, fixes the rights of the parties and permits the collection of benefits without expensive litigation. After this period has expired, the legal rights under the policy of the insured should be protected against attack by the insurer. This we conclude is guaranteed by the contract and approved by the public policy of our state.

We find support for our ruling on the law in the case of *Spellman* v. *Ruhde* (1965), 28 Wis 2d 599 (137 NW2d 425), cited by defendant. In *Spellman,* as in the present case, the parties entered into two successive agreements, the latter of which was rescinded, the parties agreeing that rescission was properly granted. The Wisconsin Supreme Court stated at pp 603, 604:

"He [the plaintiff] argues that the 1964 agreement was a novation, which completely extinguished the previous agreement. Rather than a novation, however, it appears that *this was a new contract which was intended to replace the 1963 agreement and, had it been valid, would have discharged the obligations of the earlier contract. Since this agreement in 1964 has been found to be a nullity * * * the rights under the 1963 agreement have not been extinguished.*

"As this court has previously said:

" 'To rescind a contract is to annul the contract and *restore the parties to their relative positions which they would have occupied if no such contract had ever been made.' First Wisconsin National Bank* v. *Pedley* (1932), 208 Wis 628, 635 (242 NW 512, 514). Generally, see 17A CJS Contracts § 440, p 552, and 17 Am Jur 2d, Contracts § 516, p 1002.

"Another standard textbook on the subject has stated the general rule to be:

" '* * * the substituted contract may itself be voidable for fraud, infancy, or other reasons; and if the power of avoidance is exercised, the avoided contract is nullified both as an executory contract and as a discharge. The prior claim then becomes again enforceable.' 6 Corbin on Contracts, § 1293, p 196.

"The trial court properly concluded that the 1963 agreement must be considered viable upon the demise of the 1964 agreement." (Emphasis supplied).

As we interpret *Spellman, supra,* and apply its holding to the facts in the instant case, the 1963 policy, having been rescinded, is a nullity, and the 1961 policy was not extinguished and its terms continued to operate including the running of the two-year incontestable period.

Equity cases are reviewed *de novo,* and we do not generally reverse or modify, unless convinced that we would have had to reach another result had we occupied the position of the trial court. *Wells* v. *Wells* (1951), 330 Mich 448; *Ethridge* v. *Ethridge* (1948), 322 Mich 578; *Socha* v. *Socha* (1966), 5 Mich App 404; and *Georges* v. *Ballard* (1969), 20 Mich App 554. We are persuaded that had we occupied the position of the trial court in the instant case that we would have been required to reach a different result.

Reversed and remanded for further proceedings to determine whether defendant qualifies for disability benefits under the 1961 policy, with costs to defendant.