MS DEVELOPMENT, INC v AUTO PLAZA OF WOODHAVEN (AFTER REMAND)

Docket No. 177764. Submitted March 5, 1996, at Detroit. Decided December 20, 1996, at 9:15 A.M. Leave to appeal sought.

MS Development, Inc., brought an action in the Wayne Circuit Court against Auto Plaza of Woodhaven, Auto Plaza of Southgate, and others, alleging that Woodhaven and Southgate failed to pay for certain equipment and breached certain lease agreements. Woodhaven and Southgate filed a counterclaim against MS Development. MS Development moved for summary disposition with regard to its original complaint. Woodhaven and Southgate then sought leave to amend their counterclaim. The court, J. Phillip Jourdan, J., granted summary disposition for MS Development and denied Woodhaven and Southgate leave to amend their counterclaim. Woodhaven and Southgate then filed a new action in the Wayne Circuit Court against MS Development. The complaint contained allegations nearly identical to those in the counterclaim that they had unsuccessfully attempted to file in the prior action and sought the same relief. The court, J. Phillip Jourdan, J., granted summary disposition for MS Development. Woodhaven and Southgate appealed the decisions in both cases. The Court of Appeals, HOOD, P.J., and BRENNAN and CORRIGAN, JJ., consolidated the appeals, affirmed the order granting summary disposition and dismissing the second action, reversed the order granting summary disposition and denying leave to amend the counterclaim in the first action, and remanded the matter to the trial court for further proceedings. *MS Development, Inc v Auto Plaza of Woodhaven*, unpublished opinion per curiam of the Court of Appeals, issued October 14, 1993 (Docket Nos. 139080, 143606). On remand, Woodhaven and Southgate filed amended pleadings, which included a counterclaim nearly identical to the amended counterclaim they had attempted to file and to the complaint in the second action. The court granted summary disposition for MS Development with regard to the counterclaim, finding it barred by the trial court's previous dismissal of the same claims and the Court of Appeals affirmance of that dismissal. Woodhaven and Southgate appealed.

After remand, the Court of Appeals *held*:

1. The trial court properly found that the claims advanced in the counterclaim were barred by the doctrine of law of the case. Therefore, the trial court's order must be affirmed even though the prior panel of the Court of Appeals may have erred in holding that Woodhaven and Southgate failed to state any recognizable claim upon which relief can be granted.

2. Woodhaven and Southgate were not denied due process of law.

Affirmed.

APPEAL — LAW OF THE CASE.

The law of the case doctrine states that a ruling by an appellate court regarding a particular issue binds the appellate court and all lower tribunals with regard to that issue; the doctrine applies to the questions specifically determined in a prior decision and to questions necessarily determined to arrive at the decision; the law of the case generally applies regardless of the correctness of the prior decision.

*Evans & Luptak, P.L.C.* (by *Eric A. Parzianello*), for MS Development, Inc.

*Rosati Associates, P.C.* (by *A. D. Rosati*), for Auto Plaza of Woodhaven and Auto Plaza of Southgate.

AFTER REMAND

Before: MACKENZIE, P.J., and CAVANAGH and T. L. LUDINGTON,* JJ.

PER CURIAM. Defendants[1] Auto Plaza of Woodhaven (Woodhaven) and Auto Plaza of Southgate (Southgate) appeal as of right the order granting, pursuant to MCR 2.116(C)(7), summary disposition for MS Development, Inc. (hereafter plaintiff), of defendants' counterclaim. We affirm, but only because we are compelled to do so by the law of the case doctrine.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Throughout this opinion, "defendants" will refer to Auto Plaza of Woodhaven and Auto Plaza of Southgate only.

In 1987, Dan Dal Pian owned two-thirds of the stock in Woodhaven and Paul Rosati owned one-third. Dal Pian and Rosati each owned half the shares in Southgate. In addition, Dal Pian owned two-thirds of the stock in the M-59 Auto Plaza and Rosati owned the remaining third. Defendants had developed auto plazas and wished to lease space to national franchisors who would offer automotive repair services to the public.

Plaintiff is engaged in the operation of a franchise chain of motor vehicle service facilities. In December 1987, plaintiff entered into a lease with Southgate for a term of fifteen years. In February 1988, plaintiff also entered into a lease with Woodhaven for a term of fifteen years.

Subsequently, plaintiff entered into a franchise agreement with Cruz Auto Service, Inc. (Cruz), and subleased the Southgate property to Cruz. In addition, plaintiff apparently intended to sublease the Woodhaven property to Cruz. The stockholders of Cruz were Dal Pian, his father, and his brother-in-law. Dal Pian personally guaranteed Cruz' performance with plaintiff. Plaintiff furnished equipment at Southgate and Woodhaven in anticipation of Cruz' operations at the properties.

Plaintiff knew that Cruz lacked the necessary funds to operate its business at the time it entered into the subleases and attempted to help it obtain financing. However, Cruz was unable to secure a loan through the Small Business Administration and by the beginning of 1989 could not meet its commitments to plaintiff.

In the meantime, the relationship between Dal Pian and Rosati had deteriorated. On July 13, 1989, Rosati

sent a letter to plaintiff requesting that future rent checks be mailed to him. Dal Pian reacted by calling directors meetings for the corporations and engineering the removal of Rosati as president and director of Woodhaven and Southgate. On July 24, 1989, Dal Pian's attorney sent plaintiff a letter stating that Rosati's letter should be disregarded.

In the autumn of 1989, defendants entered into agreements with plaintiff under which the leases were terminated. In addition, defendants agreed to lease the equipment originally intended for Cruz and purchase it when the leases ended.

On May 31, 1990, plaintiff filed a lawsuit against defendants. Plaintiff claimed that defendants had failed to make the payments on the equipment and asserted claims for breach of the lease agreements. In July 1990, defendants filed a counterclaim alleging that plaintiff failed to provide a disclosure statement, failed to provide contractual services, and made false representations regarding the sales and profits defendants would realize.

In September of 1990, Rosati and Dal Pian reached a settlement under which Rosati became the sole shareholder of Southgate and Woodhaven, and Dal Pian became the sole shareholder of the M-59 Auto Plaza. Soon thereafter, counsel for Rosati substituted in the lawsuit on behalf of defendants.

In February 1991, plaintiff moved for summary disposition with regard to its original complaint. In March 1991, defendants moved to amend their counterclaim, seeking to set aside the equipment leases and enforce plaintiff's liability for rent. The trial court granted summary disposition for plaintiff and denied defendants leave to amend their counterclaim.

On March 25, 1991, defendants filed a new lawsuit against plaintiff. Defendants' complaint contained allegations nearly identical to those in the counterclaim that they had unsuccessfully attempted to file and sought the same relief. This new lawsuit was assigned to the same trial judge. Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(8), which was granted on July 30, 1991.

Defendants appealed the trial court's decisions in both cases to this Court, which consolidated the appeals. On October 14, 1993, this Court issued an opinion reversing the trial court's denial of defendants' request to amend their counterclaim on the basis that the trial court failed to provide particularized reasons for the denial.[2] This Court remanded the matter to the trial court for further proceedings. See *MS Development, Inc v Auto Plaza of Woodhaven*, unpublished opinion per curiam of the Court of Appeals, issued October 14, 1993 (Docket Nos. 139080, 143606). In its opinion, this Court also affirmed the trial court's grant of summary disposition on July 30, 1991, pursuant to MCR 2.116(C)(8) with regard to defendants' complaint. *Id.*

In April 1994, defendants filed their amended pleadings, which included a counterclaim that was nearly identical to the amended counterclaim that they had attempted to file in March 1991 and to the complaint that they had filed on March 25, 1991. In June 1994, plaintiff moved for summary disposition of defend-

---

[2] A party's motion to amend its pleadings ordinarily should be granted; denial should only be for particularized reasons, such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiency by amendments previously allowed, undue prejudice to the opposing party, or futility. *Weymers v Khera*, 210 Mich App 231, 240; 533 NW2d 334 (1995), lv gtd 451 Mich 898 (1996).

ants' counterclaim pursuant to MCR 2.116(C)(7), claiming that it was barred by the trial court's previous dismissal of the same claims and this Court's affirmance of that dismissal. The trial court agreed and entered an order granting plaintiff summary disposition of defendants' counterclaim on August 4, 1994. Defendants appeal this order as of right.

I

Defendants first argue that the trial court erred in granting summary disposition of their counterclaim. This Court reviews an order granting or denying summary disposition de novo as a question of law. *Turner v Mercy Hosps & Health Services of Detroit*, 210 Mich App 345, 348; 533 NW2d 365 (1995). MCR 2.116(C)(7) tests whether a claim is barred because of immunity granted by law. We review all the affidavits, pleadings, and other documentary evidence submitted by the parties and, where appropriate, construe the pleadings in favor of the nonmoving party. A motion brought pursuant to MCR 2.116(C)(7) should be granted only if no factual development could provide a basis for recovery. *Smith v YMCA of Benton Harbor/St Joseph*, 216 Mich App 552, 554; 550 NW2d 262 (1996).

Defendants argue that the trial court erred in refusing to allow them to file their counterclaim. However, the claims defendants sought to raise in their counterclaim were essentially identical to the claims addressed and rejected by a panel of this Court. That decision is now the law of the case. See *Int'l Union, UAW v Michigan*, 211 Mich App 20, 24; 535 NW2d 210 (1995). Therefore, the trial court properly held that the claims were barred.

Although we are compelled to affirm by the law of the case doctrine, we wish to note that we believe this Court erred in its prior holding that defendants' complaint "failed to state any recognizable claim upon which relief can be granted." *MS Development, supra.* The panel offered no discussion of or rationale for its holding. After carefully reviewing defendants' allegations, we conclude that defendants have stated a claim upon which relief can be granted.

Defendants allege that at all relevant times in this case, Dal Pian was both a principal in Cruz and an officer, director, and shareholder in defendant corporations. After securing a commitment from Cruz to enter into franchise agreements with plaintiff and sublease the properties in question, plaintiff entered into fifteen-year leases with defendants. Dal Pian personally guaranteed Cruz' performance under the agreement with plaintiff. However, Cruz' financing fell through, and Cruz was unable to fulfill its obligations under the sublease and franchise agreement. Dal Pian then entered into a settlement agreement with plaintiff that terminated plaintiff's obligations to defendants under the leases and obligated defendants to buy the equipment that Cruz had formerly been responsible for purchasing.

Thus, under the terms of the settlement agreement, plaintiff was relieved of the obligation to pay approximately $1.1 million in rent to defendants, and Cruz and Dal Pian were relieved of their obligations to plaintiff. Defendants, however, lost the building leases and the rent due under them. In addition, defendants were encumbered with agreements obligating them to pay $101,919 for equipment for which they had no business use. Under the agreements, defendants

received nothing in consideration for the loss of approximately $1.1 million in assets and the incurrence of a $101,919 liability. These agreements were neither fair nor in the best interests of defendant corporations.

Under the facts alleged by defendants, Dal Pian would clearly be responsible to defendants for the breach of his fiduciary duties.[3] However, defendants also allege that plaintiff knew or should have known that it was assisting Dal Pian in literally stealing from defendants.[4] We conclude that defendants have stated a cause of action for the rescission of the settlement agreements.[5] Where there has been a violation of the duty of loyalty by one party to a contract, knowingly participated in and induced by the other party, the contract is voidable on both sides. See *In re Estate of Rothko*, 43 NY2d 305, 324; 372 NE2d 291; 401 NYS2d 449 (1977). Moreover, "where the inadequacy of con-

---

[3] A fiduciary is expected to refrain from acting for his private advantage or otherwise contrary to the interests of his beneficiary or principal in matters affecting the fiduciary relation, and he is liable in tort for breach of his duty. 4 Restatement Torts, 2d, § 874, p 300.

[4] In its supplemental brief in response to this Court's order, plaintiff mainly argues that defendants have not submitted evidence in support of their claim that it knew or should have known that Dal Pian was breaching his fiduciary duties to defendants. However, the issue is whether defendants have stated a claim under which relief can be granted. We express no opinion regarding defendants' ability to prove their allegations.

[5] Upon rescission of the contract, the fifteen-year leases between the parties would again be valid. As this Court has stated:

"It is undoubtedly the law that, if a void or voidable contract is substituted for a valid preexisting obligation and the substituted contract is later rescinded, because void or voidable, the preexisting valid contract is restored, as if nothing had happened." [*Travelers Ins Co v Carey*, 24 Mich App 207, 215; 180 NW2d 68 (1970), quoting *Indiana Flooring Co v Grand Rapids Trust Co*, 20 F2d 63, 65 (CA 6, 1927).]

sideration is so palpably gross as to shock the conscience of the court, or where the inadequacy is accompanied by other inequitable or unconscionable features, a court of equity may decree the cancellation of the contract." 17A Am Jur 2d, Contracts, § 568, p 583.

However, despite our belief that defendants have stated a valid claim, we are constrained by this Court's prior decision. The law of the case doctrine states that a ruling by an appellate court regarding a particular issue binds the appellate court and all lower tribunals with regard to that issue. The doctrine applies to questions specifically determined in a prior decision and to questions necessarily determined to arrive at the decision. *Int'l Union, supra*. The law of the case generally applies regardless of the correctness of the prior decision.[6] *Freeman v DEC Int'l, Inc*, 212 Mich App 34, 38; 536 NW2d 815 (1995). Thus, despite our view that this Court erred in affirming the trial court's summary dismissal of defendants' claims, we are bound by that decision.

Thus, we hold that the trial court did not err in dismissing defendants' counterclaim pursuant to MCR 2.116(C)(7) because the claims raised were almost identical to those already rejected by this Court. However, we strongly urge the Supreme Court to address defendants' claims upon further appeal.

---

[6] Michigan recognizes two exceptions to the application of the law of the case doctrine: (1) when the decision would preclude the independent review of constitutional facts and (2) when there has been an intervening change of law. *Freeman v DEC Int'l, Inc*, 212 Mich App 34, 38; 536 NW2d 815 (1995). Neither exception applies in the present case.

II

Defendants also argue that they were denied due
process of law by the trial court's refusal to permit
them to amend their counterclaim because they lost
their right to appeal this Court's previous decision to
the Supreme Court. However, pursuant to MCR
7.302(C)(4)(b), defendants may still apply for leave to
appeal all issues raised in this Court, including those
relating to the remand question. Accordingly, defend-
ants have not been denied due process of law.

Affirmed.