Robert L. MORRELL, et al.

v.

James S. RICE, et al.

Supreme Judicial Court of Maine.

Argued Feb. 2, 1993.
Decided March 29, 1993.

Michael T. Healy (orally) Vickie A. Caron, Verrill & Dana, Portland, for plaintiffs.

Allen J. Hrycry (orally), Reef, Jordan & Hrycry, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

CLIFFORD, Justice.

Defendants James and Rita Rice appeal from a judgment entered in the Superior Court (Cumberland County, *Alexander, J.*) following a nonjury trial. They contend that the court's determination that the plaintiffs, Robert and Nancy Morrell, have an easement by necessity over their land was error because there was no unity of title at the time the easement was found to have been created and because the Morrells' land was and is accessible by land and from the sea. The Rices also contend that the court erred in giving the Morrells the right to install utility lines underground within the easement. The Morrells dispute that part of the court's judgment that restricts the use of the easement to serve only a single-family residence. We find no error in the determination that the Rices' land is subject to an easement by necessity and that the easement allows the Morrells to install underground utilities, and we agree with the Morrells that the court erred in restricting the use of the easement to serving a single-family residence. Accordingly, we modify the judgment to delete that restriction, and, as modified, we affirm.

The Morrells, owners of a ten-acre parcel of land in Brunswick fronting on Middle Bay but with no road frontage, sought in the Superior Court a determination that their land is benefitted by an easement by necessity over abutting land owned by the Rices. The Rice land has frontage on the Harpswell Road. The Morrell and Rice parcels, which are located on a peninsula, originally were in common ownership; severance of the two parcels of land from the common owner occurred in 1810 in an intra-family transaction. The deed describing the land now owned by the Morrells was dated April 24, 1810. The deed describing the land now owned by the Rices was dated April 7, 1810. In both deeds, there are multiple grantors, all named Given. In the deed describing the land now owned by the Morrells, John Given is the grantee and Samuel Given is one of the grantors. In the deed describing the land now owned by the Rices, Samuel Given is the grantee and John Given is one of the grantors. Both deeds were acknowledged on April 24, 1810, before the same notary public. The deed describing the Rice land was recorded on May 7, 1810, and the deed describing the Morrell parcel was recorded on May 24, 1810.

At trial, Robert Morrell testified that a portion of his land abuts that of the Rices, that his land is bordered by marshes and tidal flats on two sides,[1] and that the only access to his property by land is from the Harpswell Road, across the Rice land. Although a portion of the Morrells' land fronts on tidal marsh, at low tide the water recedes approximately 1000 yards and the

---

**1.** Morrell's property is also bounded by land owned by Christopher Livesay, but Livesay's property is at the end of the peninsula and is accessible only from the water.

flats freeze in the winter months, thereby severely limiting the times when access by boat is possible. Morrell testified that at the time he bought his land in 1971, he understood that access over the Rice property to his land had existed for many years. There is evidence of an old roadway going through the Rice property to the Morrell parcel.

The court determined that the Morrells established the existence of an easement by necessity.[2] The court found the intrafamily land transfers as evidenced by the deeds of 1810 to be "essentially contemporaneous," that the Harpswell Road existed in 1810, and the obvious access from the Harpswell Road to what is now the Morrell parcel was across the Rice land. The court also found that, except for the Rice land, the Morrell land was surrounded by marsh, and although there was tidal frontage, access to the sea was not realistic. The court established the location and condition of the easement, and this appeal followed.

## I.

The Rices first contend that the court's conclusion that their land is burdened by an easement by necessity is flawed because of the absence of unity of title and because there is alternative access to the Morrell land.

## A.

■ An easement by necessity, an easement implied in the law, may be created when a

> grantor conveys a lot of land from a larger parcel and that conveyed lot is "landlocked" by the grantor's surrounding land and cannot be accessed from a road or highway. Because of the strict necessity of having access to the landlocked parcel, an easement over the grantor's remaining land benefitting the landlocked lot is implied as a matter of law irrespective of the true intent of the common grantor.

**2.** The Morrells' complaint did not allege the existence of a quasi-easement, and although it was discussed at trial, the Morrells have not pursued the issue on appeal. *See Frederick v.*

*Frederick v. Consolidated Waste Servs., Inc.,* 573 A.2d 387, 389 (Me.1990).

■ An easement by necessity also may be created when there are simultaneous conveyances by a common grantor, and one of the conveyed lots is landlocked and inaccessible. In such a case, an easement over the other simultaneously conveyed lot to benefit the inaccessible lot may be implied. *See Bowers v. Andrews,* 557 A.2d 606, 609 (Me.1989) (implied grants of easements more readily inferred when easement claimed by one contemporaneous conveyance against another).

> It is . . . important to consider whether [the easement] is claimed against a simultaneous conveyee. Where the claim is thus made, the implication is stronger than where the claim is made against the conveyor himself. It is reasonable to infer that a conveyor who has divided his land among simultaneous conveyees intends that very considerable privileges of use shall exist between them. Commonly, in such cases, the conveyance constitutes a family distribution, and, where this is true, the probability of a desire that existing conveniences shall continue to be operative is greater than the probability that a conveyor would desire them continued as against himself.

*Restatement of Property* § 476, comment f (1944).

■ The Rices contend that the 1810 conveyances creating their parcel of land and that of the Morrells were not simultaneous and that the court's finding to that effect is not supported in the record. They point to the 1810 deed conveying the parcel they now occupy as being dated and recorded earlier than the deed to what is now the Morrell parcel, and they argue that their parcel was severed before the Morrell parcel was conveyed, precluding the creation of an easement by necessity.

Although the deeds do have different dates, they are proximate in time. More

*Consolidated Waste Servs.,* 573 A.2d 387, 389–90 (Me.1990) (explaining elements of a quasi-easement).

importantly, the transactions involve several grantors, all members of the Givens family, and are *acknowledged on the same date before the same notary public.* Certainly it is not unreasonable to infer that some of the grantors may have *signed* the deeds at different times, but that *delivery* of the deeds, the essential act of actual conveyance, occurred simultaneously. It is also not unreasonable to conclude that the family would not have intended one of the lots being created to have no access. The court's finding that the deeds were conveyed simultaneously is consistent with the public policy that lands should not be unfit for use, *see* 25 Am.Jur.2d *Easements & Licenses* § 34 at 448 (1966), and is not clearly erroneous.

### B.

The Rices next contend that, even if there was a simultaneous conveyance of the two lots, the Morrells' claim of an easement by necessity must fail because there was access to the Harpswell Road over the remaining land of the common grantor. Therefore, they argue, an easement over what is now their land was not strictly necessary.

■ It is true that when alternative road access across the common grantor's land is available, the law will not imply an easement by necessity across the land of one of the grantees. *Frederick*, 573 A.2d at 389; *O'Connell v. Larkin*, 532 A.2d 1039, 1042 n. 5 (Me.1987). Moreover, it is the burden of the landowner claiming an easement by necessity to demonstrate that an alternative land route was not available. *Jost v. Resta*, 536 A.2d 1113, 1115 (Me. 1988). In this case, however, the evidence supports the trial court's finding that the Morrells have met their burden.

The Superior Court found that for all practical purposes the Morrell parcel is "landlocked or locked in a way that really does not provide access." That finding is supported by Rice's own testimony that the Morrells' only access is across his land or from the sea. In addition, the Morrells introduced in evidence two maps, one a geological survey map and the other a nautical map of Casco Bay. Morrell drew lines on the maps indicating where his property was located. Those lines were not disputed by the Rices and indicate that the only way for the Morrells to obtain road access is across the Rices' land. The Morrells' land is located on the peninsula in such a way that, even if the common grantor still owned land at the time when the present Morrell and Rice parcels were originally conveyed, that land was separated from the Morrell parcel by tidal marsh. Therefore, the Morrells' predecessor in title could not have used the grantor's remaining land to access the Harpswell Road.[3]

### C.

■ The Rices also contend that the Morrell land is accessible from the sea, making an easement across their land unnecessary and precluding the creation of an easement by necessity. It is true that a showing of access to land across navigable water could in some circumstances defeat a claim of an easement by necessity. *Hildreth v. Googins*, 91 Me. 227, 228, 39 A. 550 (1898); *Kingsley v. Gouldsborough Land Improvement Co.*, 86 Me. 279, 281–82, 29 A. 1074 (1894).[4] In this case, however, the court's finding that the Morrells' land was not accessible by the sea is not clearly erroneous. Access to the Morrells' land from the sea is across a tidal flat that at low tide recedes approximately 1000

**3.** The Rices contend that a drawing accompanying a stipulation by the parties shows that the Morrell parcel had road access across the grantor's remaining land. The drawing is a photocopy of a 1741 plan of certain lots located in Brunswick. There is no indication that the plan is a scale drawing or that it accurately represents the shoreline at the time of the severance in 1810.

**4.** We have not reexamined in recent years, in light of the changed conditions of transportation based on the ascendancy of the automobile, the extent to which water access would still preclude an easement by necessity. *See, e.g., Attaway v. Davis*, 288 Ark. 478, 707 S.W.2d 302 (1986) (not reasonable to require landowner to access property by boat now that travel is almost always by motor vehicle); *see also LeMay v. Anderson*, 397 A.2d 984, 988 n. 4 (Me.1979).

yards.[5] There was evidence that to dredge the area to enable boat access at all times, assuming that all environmental and other permits could be obtained,[6] would cost approximately $300,000. Moreover, the flats freeze in the winter months. The Rices' argument that the Morrell property is sufficiently accessible by the sea is unpersuasive.

## II.

The scope of the easement as determined by the Superior Court is disputed by both parties. The Rices object to the court's inclusion in the easement of the right to install underground utilities across their land. The Morrells, on the other hand, contend that the court erred in restricting the use of the easement to serve only a single-family residence.[7]

### A.

 Whether an implied easement exists is determined by examining the circumstances existing at the time the landlocked parcel is severed from the parcel with access. *Frederick*, 573 A.2d at 389. The *scope of use* of the easement, however, is not determined solely in reference to the time of its creation. Rather, the better rule is that the scope should be defined with reference to the reasonable enjoyment of the land and all lawful uses to which it may be put. *See Traders, Inc. v. Bartholomew*, 142 Vt. 486, 459 A.2d 974, 979–80 (1983) (remand to trial court to establish use and location of easement to allow dominant owner reasonable enjoyment of land for all lawful purposes without creating an unreasonable burden on servient estate).

25 Am.Jur.2d *Easements & Licenses* § 83 at 489 (1966) provides in pertinent part:

The extent of a way of necessity is that which is required for the complete and beneficial use of the land to which such a way is impliedly attached. The rule is stated that a way of necessity is not limited to those purposes connected with the use of the dominant tenement existing at the time the easement was created, but is available for any and all purposes for which the dominant tenement may be adapted. The enjoyment of such a way is said to be limited only by the necessity for its use in connection with all lawful uses of the land to which it is appurtenant. In other words, a way of necessity is held to be coextensive with the reasonable needs, present and future, of the dominant estate; it varies with the necessity, insofar as may be consistent with the full reasonable enjoyment of the servient estate.

(Citations omitted.)

 An easement created by necessity can include not only the right of entry and egress, but also the right to make use of the easement for installation of utilities, essential for most uses to which property may reasonably be put in these times. *Stair v. Miller*, 52 Md.App. 108, 447 A.2d 109, 111 (1982). That right can include the right to make use of the easement for underground utilities. *New York Cent. R.R. Co. v. Yarian*, 219 Ind. 477, 39 N.E.2d 604, 607 (1942). In this case, in the absence of any evidence that underground utilities would present an undue burden to the Rices' land, the court did not err in concluding that the right to install such utilities was included in the easement.

### B.

 For the same reasons, we are persuaded that the court's decision to limit

5. The Livesay property, which borders on the Morrell parcel and which is located at the tip of the peninsula, is also fronted by tidal flats.

6. There was evidence that because of environmental laws it would be very unlikely that permits could be obtained.

7. The Morrells filed a timely motion to amend the judgment to delete the easement's restriction

to serve only a single-family residence. The motion was not acted on by the Superior Court prior to the filing of the Rices' notice of appeal. The Morrells, therefore, did not file a cross-appeal. The parties agreed at oral argument that this court could address and decide the issue as if the motion to amend had been denied in the Superior Court and the Morrells had filed a cross-appeal.

the easement to serve only a single-family use of the Morrell property is not justified on this record. An easement by strict necessity should benefit the dominant estate for any lawful and reasonable use. There was no evidence that the only lawful use of the Morrell land would be for one single-family home. Nor was there evidence as to the extent of the burden on the Rice land should the Morrell land be used by more than one family, or for other than residential purposes. Whether the use of the easement for a particular purpose in the future will cause an undue burden on the Rice property would have to be determined in the context of that use. *See Traders, Inc.*, 459 A.2d at 980.

The entry is:

Judgment modified to delete restriction on use of easement to single-family residence, and, as modified, affirmed.

All concurring.