A. MacDonell RICHARDS, Plaintiff-Appellant,

v.

LAND STAR GROUP, INC., Roman and Ruth Peterson, Roger Peterson, and St. Croix Group, LLC, Defendants-Respondents.

Court of Appeals

*No. 98–1983. Oral argument February 4, 1999.—Decided February 23, 1999.*

(Also reported in 593 N.W.2d 103.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert L. Bach* and *Timothy J. Hassett* of *Felhaber, Larson, Fenlon & Vogt, P.A.*, and oral argument of *Timothy J. Hassett* of St. Paul, Minnesota, *admitted Pro Hac Vice.*

On behalf of the defendants-respondents, the cause was submitted on the brief of *Thomas E. Gorman* of *Gorman & Gorman, Ltd.*, and oral argument of *Christopher Arndt* of *Gorman & Gorman, Ltd.* of Red Wing, Minnesota.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J. A. MacDonell Richards appeals a judgment granting him a sixteen-and-one-half-foot-wide easement of necessity to his river bluff property; denying his right to run electric, telephone, and other utilities along the easement; and denying an easement of necessity to his river frontage property. On appeal, Richards argues that he is entitled to: (1) electric, telephone and other utilities along an easement of necessity to the river bluff property; (2) a fifty-foot-wide easement to the river bluff property; and (3) an easement of necessity to the river frontage property. We agree with the trial court that Richards is not entitled to an easement of necessity to his river frontage property. Regarding the river bluff easement, we hold that the reasonable use and enjoyment of a dominant estate requires utility installation as long as such installation

does not overburden the servient estate. Accordingly, we remand to the trial court for its determination under this standard. Because this case is remanded, we also direct the trial court to reconsider whether the easement's width is sufficient in light of the dominant estate's future necessary and reasonable needs, including utility installation.

## I. BACKGROUND

In August 1946, Roman Peterson purchased property in Pierce County, Wisconsin, which we will refer to as parcels 1 and 2. In 1947, Peterson forfeited parcel 1 to Pierce County as a result of failing to pay real estate taxes. At a public auction in 1947, Pierce County purchased this parcel and later issued itself a tax deed for the property. In 1963, it conveyed the parcel to Richards by quitclaim deed, which stated: the "grantor herein having no ingress or egress privileges to said property."

Parcel 1 is approximately thirty-four acres, triangular in shape, has no access to a public road and, as a whole, is landlocked. No written easement exists for access to parcel 1 from any public road. Further, a railroad track runs along the Mississippi River and divides parcel 1 into two sections, one immediately adjacent to the Mississippi River (river frontage prop-

erty)[1] and the other lying easterly of the railroad (river bluff property).[2]

The Petersons orally gave Richards access to the river bluff, and in exchange, Richards let the Petersons farm part of his land. To access an area known as Smith's Landing on the river, Richards drove down a second road on the Petersons' property. He drove his car part of the way and then walked the rest of the road, including traversing under a railroad overpass. When the Petersons sold parcel 2 to a developer in 1996, the developer told Richards that he "did not have access" over parcel 2 to reach parcel 1.[3]

Richards' complaint requested two easements over parcel 2 to access both the river bluff and river frontage of parcel 1. The trial court granted Richards an easement of necessity for "ingress and egress" to the river bluff property, restricting its width to one rod (sixteen-and-one-half feet), but denied him the right to install utilities along the easement. Further, the trial court denied Richards' request for a second easement of necessity to the river frontage portion of parcel 1. Richards appeals.

---

[1] One potential issue is whether Richards' possible river access means that he is not landlocked. Because neither the parties nor the trial court addressed the issue, and because the parties did not brief the issue on appeal, we will not address it. *See Riley v. Town of Hamilton*, 153 Wis. 2d 582, 588, 451 N.W.2d 454, 456 (Ct. App. 1989).

[2] At oral argument, the parties conceded that the railroad owns the property over which the tracks run in fee simple.

[3] The Petersons subsequently started foreclosure proceedings against the developer, and for purposes of our opinion, we will occasionally refer to parcel 2 as the "Petersons' property."

## II. ANALYSIS

An easement is an interest in land in the possession of another. *Atkinson v. Mentzel*, 211 Wis. 2d 628, 637, 566 N.W.2d 158, 162 (Ct. App. 1997). Existing distinct from the ownership of the land, an easement is a "liberty, privilege, or advantage in lands, without profit." *Stoesser v. Shore Drive Partnership*, 172 Wis. 2d 660, 667, 494 N.W.2d 204, 207 (1993). An easement creates two distinct property interests: the dominant estate and the servient estate. *Atkinson*, 211 Wis. 2d at 637, 566 N.W.2d at 162. The dominant estate enjoys the privileges an easement grants, while the servient estate permits the dominant estate to exercise those privileges. *Id.; see also Millen v. Thomas*, 201 Wis. 2d 675, 678, 550 N.W.2d 134, 135 (Ct. App. 1996). With these general principles in mind, we turn to Richards' three arguments.

### 1. Utilities Along the Easement to the River Bluff Property

Richards contends that the reasonable use and enjoyment of his property requires that he be permitted to install electric, telephone, and other utilities along the easement of necessity to the river bluff property. The trial court denied the request for utility installation, noting:

> [The] issue . . . [of] the electricity and telephone easement . . . wasn't raised before. . . . In the ordinary course that might not make a difference whether I granted a telephone and electrical easement, but this is not the ordinary circumstance. . . . I am not so sure this isn't going to be a fluid situation for many years to come, so we might as well do it

now rather than ... in the future. ... And because of that fluid situation ... regarding the utilities and the telephone, I don't see the necessity to put that in there and to allow that. We are talking necessity. He has got a generator. That can serve its purpose and obviously does and has. And there is other ways in this day and age of dealing with the phone problem besides having a phone wire. Use a cell phone. ... So with technology I can't see that anybody has established it is a necessity to do this ... especially when it is the fluid situation that it is [and the] way of necessity ... is going to be someplace else ... the road there is going to be ... a public road.

Citing *Atkinson*, Richards contends that an easement of necessity includes all that is reasonably necessary for the full enjoyment of the easement and that at a minimum, the reasonable use and enjoyment of property requires utilities. In response, the Petersons distinguish *Atkinson* on its facts, arguing that unlike the broad written easement granted in *Atkinson*, the easement here was limited to "ingress and egress." Indeed, Richards acknowledges that *Atkinson* is factually distinct, but contends that its logic is "equally applicable" because as in *Atkinson*, the easement at issue is an access easement. As we will explain, we conclude that the reasonable use and enjoyment of the dominant estate requires utilities, as long as such installation does not overburden the servient estate.[4]

In *Atkinson*, we concluded that a written easement grant was not limited to physical ingress and egress,

---

[4] Our holding makes it unnecessary to address Richards' argument that the trial court's concern about fluidity does not justify denial of utilities. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (Cases should be decided on the "narrowest possible ground."); *see also Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

but extended to utility installation. *Id.* at 637–41, 566 N.W.2d at 162–64. The conveyance stated that the easement's purpose was to "provide access" and "shall allow access for all uses of said property other than retail sales"; it further described the easement as a "right of way." *Id.* at 638, 566 N.W.2d at 162. Holding that the easement extended to utility installation, we stated:

> The easement language does not limit the easement to "ingress" and "egress." In fact, the easement does not even use those terms. Nor does the easement language limit use of the easement to simple "access" or "right of way." Rather, the easement provides "access for all uses of said property other than retail sales." We conclude that this modifying language broadens the access terms of the easement beyond strict physical ingress and egress.

*Id.* at 638–39, 566 N.W.2d at 163. Because we concluded that the easement's broad and unambiguous terms encompassed utilities, we did not address whether an easement of necessity was warranted. *Id.* at 641 n.6, 566 N.W.2d at 164 n.6.

Additionally, we suggested that had the grant limited the easement to ingress and egress, utility installation would not have been permitted. *Id.* at 638–39, 641, 566 N.W.2d at 163, 164. In this case, by contrast, we are dealing with a trial court's grant of an easement of necessity for ingress and egress and its ruling that its grant did not include utilities. Unlike cases in which our appellate courts have addressed whether a servient estate's express/written easement grant to the dominant estate included utility installation, here there is no question that the trial court intended to limit the easement to ingress and egress

and exclude utility installation. Thus, the issue here is not whether a written easement grant includes utility installation, as in *Atkinson*, but whether the trial court erroneously denied utility access along the river bluff easement.

The general rule regarding the extent of a way of necessity is as follows:

> The extent of a way of necessity is that which is required for the complete and beneficial use of the land to which such way is impliedly attached. A way of necessity is not limited to those purposes connected with the use of the dominant tenement existing at the time the easement was created, but is available for any and all purposes for which the dominant tenement may be adapted. The enjoyment of such a way is said to be limited only by the necessity for its use in connection with all lawful uses of the land to which it is appurtenant. *In other words, a way of necessity is held to be coextensive with the reasonable needs, present and future, of the dominant estate; it varies with the necessity, insofar as may be consistent with the full reasonable enjoyment of the servient estate.*

25 AM. JUR. 2D *Easements & Licenses* § 92 at 664 (1996) (footnotes omitted; emphasis added). Similarly, the RESTATEMENT notes:

> Servitudes are implied under the rule stated in this section on the basis of necessity alone, without proof of a prior use of the properties consistent with the claimed servitude. To support implication of a servitude . . . the rights claimed must be necessary to the reasonable enjoyment of the property. "Necessary" rights are not limited to those essential to enjoyment of the property, but include those which are reasonably required to make effective use of the property. . . .

What is necessary depends on the nature and location of the property, and may change over time. . . . Until recently, access for foot or vehicular traffic tended to be the only rights regarded as necessary for the enjoyment of surface possessory estates. However, the increasing dependence in recent years on electricity and telephone service, delivered through overland cables, justify the conclusion that implied servitudes by necessity will be recognized for those purposes. Whether access for other utilities and services has also become necessary to reasonable enjoyment of property, depends on the nature and location of the property, and normal land uses in the community.

RESTATEMENT (THIRD) OF PROPERTY § 2.15 cmt. d (1989).

When applying these general rules, courts have considered whether utility installation would create an unreasonable burden on the servient estate. For example, in *Morrell v. Rice*, 622 A.2d 1156, 1158 (Me. 1993), the trial court established an easement of necessity and also held that the easement included the right to install underground utilities. The Maine Supreme Court affirmed and held: "[I]n the absence of any evidence that underground utilities would present an undue burden to the Rices' land [the servient estate], the court did not err in concluding that the right to install such utilities was included in the easement." *Id.* at 1160. Further, *Morrell* reversed the trial court's decision to limit the easement's use solely as a single-family residence because the record did not justify that restriction. *Morrell* explained that an easement should benefit the dominant estate for any lawful and reasonable use and that no evidence existed that the only use would be for a single-family home. *Id.* at 1161. Further, the record did not indicate the extent of the burden to the servient estate if the land was used for other pur-

poses. *Id.* Whether the easement's use for a future purpose would unduly burden the servient estate would be decided in that use's context. *Id.*

Likewise, the district court in *Galvin v. Gaffney*, 24 F. Supp.2d 223, 233 (D.C. Conn. 1998), found an easement of necessity and held that it included the right to install underground utilities. In so holding, the trial court first noted that the use of the passway to provide utility services would be highly convenient and beneficial for the dominant estate's enjoyment. *Id.* (citing RESTATEMENT (THIRD) OF PROPERTY § 2.15 cmt. d (1989)). Second, the trial court reasoned that a broad reading of the easement was supported under Connecticut law, as well as the law of other jurisdictions. *Id.* at 234 (collecting cases). Crucial to *Galvin's* holding was whether the utility installation overburdened the servient estate, but the servient estate provided no evidence that any burden would result if the court were to include utilities along with the easement of necessity. *Id.* at 234–35 (citing *Dowgiel v. Reid*, 59 A.2d 115, 121 (Pa. 1948)).

Other courts addressing utilities and easements of necessity have also focused on the burden to the servient estate. *See, e.g., New York Cent. R. Co. v. Yarian*, 39 N.E.2d 604, 606 (Ind. 1942) (allowing utility installation; "extent of a way of necessity is a way such as is required for the complete and beneficial use of the land to which such way is impliedly attached"); *Beck v. Mangels*, 640 A.2d 236, 249 (Md. App. 1994). Wisconsin has also focused on the actual burden that utility installation would pose on the servient estate. In *Millen*, 201 Wis. 2d at 685–87, 550 N.W.2d at 138–39, we recited the general rule that an easement for a specified purpose may not be enlarged such that an added burden is placed upon the servient estate.

841

Consistent with *Atkinson*, a way of necessity is coextensive with reasonable needs, present and future, of the dominant estate and varies with the necessity, insofar as may be consistent with the full reasonable enjoyment of the servient estate. In current times, the reasonable use and enjoyment of property, at a minimum, requires utilities, *see Atkinson,* as long as it does not overburden the servient estate. Accordingly, we reverse that portion of the judgment denying utility installation along the river bluff easement and remand to the trial court for its determination whether utility installation would overburden the servient estate, and if not, to determine a reasonable method for the installation of utilities.

## 2. Width of Easement of Necessity to the River Bluff Property

Next, Richards insists that the trial court erred by restricting the easement's width to sixteen-and-one-half feet based on Richards' prior use of the property as a "seasonal recreational place." Citing § 80.13(5), STATS., he claims that he is entitled to a fifty-foot-wide easement of necessity to the river bluff property. The Petersons reply that because Richards conceded before the trial court that sixteen-and-one-half feet is a sufficient width for the easement, he invited that portion of the trial court's ruling. *See Atkinson*, 211 Wis. 2d at 642–43, 566 N.W.2d at 164 (stating general rule that we will not review invited error). Alternatively, the Petersons contend, Richards failed to follow the procedures in § 80.13 for obtaining a fifty-foot-wide road.

As a threshold matter, we first address whether Richards conceded that the one-rod width was sufficient. If a party makes an express concession, we have

no obligation to review such "invited error." *See id.* at 642–43, 566 N.W.2d at 164. Here, we do not construe Richards' testimony as an express concession that the easement was sufficiently wide because although he testified that he did not need more than sixteen-and-one-half feet for "his own personal use," he also indicated that such width was "not optimum." Thus, we turn to the issue's merits.

In denying Richards' request for a wider easement, the trial court stated that it saw no reason to extend it beyond sixteen-and-one-half feet and noted that it certainly was inappropriate to make it the size of a town road. The trial court explained that if Richards wanted a town road, he needed to apply to the township. Further, the trial court explained that the sixteen-foot-wide road is not "unreasonably small" because it was sufficient for his use of the property as a "seasonal recreational place."

To support his argument that he is entitled to a fifty-foot-wide easement, Richards relies on § 80.13(5), STATS., which provides, in pertinent part:

> Whenever land : . . which is accessible, or provided with a right-of-way to a public highway, is subdivided and the owner thereof sells and transfers a part thereof or sells a parcel of said land . . . which part or parcel would otherwise be landlocked . . . the seller shall in so subdividing said land . . . provide a cleared right-of-way at least 50 feet in width which shall be continuous from the highway to each part, parcel, lot or subdivision sold. In case the seller fails to do so[,] *the town board may, pursuant to proceedings under this section*, lay out a road from such inaccessible land to the public highway over the remaining lands of the seller without assessment to the latter of damages or compensation therefor. (Emphasis added.)

843

Richards declares, without analysis, that this statute clearly reflects the legislature's intent that fifty feet is a reasonable width for a private landowner to provide access to landlocked property. We are not persuaded.

It is within the trial court's discretion to determine the easement's burden on the servient estate. That use does not necessarily justify a fifty-foot-wide easement.[5] Here, however, the trial court determined that a one-rod width was reasonable based on its conclusion that the easement should be restricted to conform to the land's previous use without utilities. To the extent the trial court focused on prior use to determine the easement's width, however, the trial court erred because the scope of ingress/egress ways of necessity may reasonably increase with the dominant estate's necessary and reasonable needs as those needs exist, present and future. *See, e.g.,* 2 GEORGE W. THOMPSON, COMMENTARIES ON THE MODERN LAW OF REAL PROPERTY § 366 at 420 (1980); 25 AM. JUR. 2D *Easements & Licenses* § 92 at 664 (1996); RESTATEMENT, *supra,* § 2.15 cmt. d. Richards testified that he plans to build a retirement home on his property, and this future need must be considered. Because this case is remanded, we direct the trial court to reconsider, in its discretion, the easement's width given Richards' future necessary and reasonable needs, including installation of utilities.

---

[5] Richards testified that a one-rod width makes construction of the easement difficult, may impair access by emergency vehicles, will make winter plowing difficult, and make two-way traffic impossible. At oral argument, Richards conceded that aside from his testimony, the record contains no evidence that one rod is insufficient for these purposes.

### 3. Easement of Necessity to the River Frontage Property

Richards also contends that the trial court erred by denying his request for an easement of necessity to the river frontage property. He maintains that: (1) the trial court improperly focused on the easement's use; (2) public policy requires that we provide access to "tax forfeited properties"; (3) the trial court's decision deprives him of his riparian rights; and (4) the easement to the river bluff property is "no substitute" for access to the river frontage property because the properties constitute two distinct parcels, not one. In response, the Petersons contend: (1) an involuntary transfer, such as a tax forfeiture, cannot create an easement of necessity and that Richards knew that he had no ingress or egress rights to the property at purchase; (2) Richards is no longer landlocked; and (3) the easement would unreasonably intrude on their use of their property. Additionally, the Petersons argue that, in any event, Richards failed to join an indispensable party, the railroad.[6]

To establish an easement of necessity, the party seeking the easement has the burden to first prove two elements: (1) common ownership or unity of title of the two parcels; and (2) that the property is "landlocked," meaning that a piece of land is surrounded by land belonging to other persons so that it cannot be reached

---

[6] In their brief, the Petersons also argue that the statute of limitation bars this action. Because they abandoned this contention at oral argument, we do not address it. Further, our disposition of this issue makes it unnecessary to address each of the parties' arguments. *See Sweet*, 113 Wis. 2d at 67, 334 N.W.2d at 562.

by a public roadway. *Ludke v. Egan*, 87 Wis. 2d 221, 229–30, 274 N.W.2d 641, 645 (1979). Whether these two elements exist presents a mixed question of fact and law. Under a mixed standard of review, we are bound by a trial court's factual findings unless they are clearly erroneous. *See* § 805.17(2), STATS.; *see also Ludke*, 87 Wis. 2d at 230, 274 N.W.2d at 645. In contrast, whether the facts found establish the two required elements of an easement of necessity is a question of law we review de novo. *See State v. Smith*, 170 Wis. 2d 701, 714, 490 N.W.2d 40, 46 (Ct. App. 1992) (noting that application of facts to a legal standard is a question of law).

The parties differ, however, regarding the proper standard of review for the trial court's decision whether to grant or deny a request for an easement of necessity once the two elements are established. Richards insists that once the two elements for an easement of necessity are established, a trial court must grant the easement and retains discretion only as to its location and scope, citing *Atkinson*.[7] The Petersons, on the other hand, argue that whether an easement of necessity is required is a mixed question of law and fact, with the trial court retaining discretion whether to grant or deny the easement.

■

In the past, appellate courts have been unclear regarding the standard of review for a trial court's grant or denial of an easement of necessity, and we have located no Wisconsin case directly on point. Thus,

---

[7] Richards' reliance on *Atkinson* for the appropriate standard of review is misplaced because in *Atkinson*, unlike here, we were faced with a review of a written easement grant, so our review was de novo. *Atkinson v. Mentzel*, 211 Wis. 2d 628, 566 N.W.2d 158 (Ct. App. 1997).

the parties' disagreement is understandable. To resolve this dispute, it is helpful to understand the nature of relief sought when a court is requested to grant an easement of necessity. The Richards are requesting the court to declare a right to pass over another's property to gain access to their landlocked property. It is not a statutory or contractual right, but rather one the courts created to grant relief to a landowner who purchases landlocked property from a common grantor. *Ludke*, 87 Wis. 2d at 230, 274 N.W.2d at 645. Courts reason that a way of access is implied over the land the grantor retains. *Id.*

A request for an easement of necessity sounds in equity. As such, it requires a weighing of the factors or equities that affect the judgment, a function which requires the exercise of judicial discretion. *See Mulder v. Mittelstadt*, 120 Wis. 2d 103, 115, 352 N.W.2d 223, 228 (Ct. App. 1984). "The basis of all equitable rules is the principle of discretionary application." *Id.* We review decisions in equity for erroneous exercise of discretion.[8] *Lueck's Home Imp., Inc. v. Seal Tite Nat'l,*

---

[8] Wisconsin law has applied the erroneous exercise of discretion standard to a wide range of decisions in equity. *See, e.g., Consumer's Co-op v. Olsen*, 142 Wis. 2d 465, 472, 419 N.W.2d 211, 213 (1988) (piercing of corporate veil is equitable remedy reviewed under erroneous exercise of discretion standard); *Pouwels v. Cheese Makers Mut. Cas. Co.*, 255 Wis. 101, 106, 37 N.W.2d 869, 872 (1949) (reformation of insurance policy to correct a mutual mistake is discretionary with a court of equity); *Depies-Heus Oil Co. v. Sielaff*, 246 Wis. 36, 41, 16 N.W.2d 386, 388 (1944) (whether to grant specific performance sounds in equity and is within trial court's discretion); *Singer v. Jones*, 173 Wis. 2d 191, 195, 496 N.W.2d 156, 158 (Ct. App. 1992) (erroneous exercise of discretion standard applied to trial

*Inc.*, 142 Wis. 2d 843, 847, 419 N.W.2d 340, 342 (Ct. App. 1987). Discretionary acts are sustained if the trial court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). We will sustain the trial court's findings of fact unless they are clearly erroneous. Section 805.17(2), STATS. We see no reason not to apply the same discretionary standard to this equitable decision.

■■■■

Thus, even if a party meets the burden to establish that the elements exist for the equitable relief sought, a court of equity still retains the discretion to grant or deny relief. *See Forest County v. Goode*, 219 Wis. 2d 655, 684, 579 N.W.2d 715, 728 (1998) (A court sitting in equity retains the discretion to grant or deny an injunction, even though the party seeking the injunction proved the necessary elements for an injunction.). That is, once the elements are established, the court may deny the request for an easement of necessity if the court examines the totality of the circumstances and concludes that there are compelling equitable reasons to deny the easement. *See id.* at 685, 579 N.W.2d at 729. In an easement of necessity case, the burden on the servient estate may be one such equitable reason. When exercising its discretion in an easement of necessity case, a trial court may balance the burden on the servient estate against the benefit to the dominant estate and consider the equities of the case as a whole to determine whether to grant equitable relief.

court's ultimate decision to grant equitable relief of a constructive trust).

With these standards in mind, we address whether the trial court properly denied Richards an easement of necessity to his river frontage property. In exercising its discretion, the trial court observed:

> That is at most one thousand square feet. And it is not likely it is even one thousand square feet even most favorable looking at this to Mr. Richards. And in return for that access to what is less than one thousand square feet on that is only accessible on certain occasions, summertime primarily, and which he has never accessed before by car, he is asking the court to burden subservient estate here with a car access, and for a length of I assume almost a mile . . . and that seems to me inappropriate.

Further, the trial court found that Richards already had access to the river bluff portion of his property and that he was not entitled to an easement to each and every portion of his property.

Although the Petersons contend the river frontage parcel is not landlocked because Richards' property is one parcel, not two, and that he is therefore not entitled to more than one easement of necessity, we need not decide this issue because even if we assume that Richards met his burden of proof to establish that the two elements exist, the trial court reasonably exercised its discretion by denying the easement of necessity to the river frontage. At oral argument, Richards conceded that his river frontage property is only a "walking beach" and that no residence could be built on his river frontage. Here, the trial court weighed the burden to the servient estate against the benefit to the dominant estate when it determined that a mile-long easement over the Petersons' property to Richards' small piece of river frontage property, which is accessible primarily

in summer and used only for walking, would overburden the servient estate.

Other equitable considerations support the trial court's exercise of discretion. At oral argument, Richards stressed that he is entitled to the river frontage easement because a 300-foot embankment and the terrain between his river bluff access and his river frontage property make it impossible to access his river frontage from the bluff. An easement of necessity, however, is not merely one of convenience and does not exist when one may reach the highway over his own land, even though such access might be difficult and expensive to establish. *See Backhausen v. Mayer*, 204 Wis. 286, 288, 234 N.W. 904, 905 (1931). The record contains no evidence that it would be impossible to construct an access route from river bluff to river frontage, and in any event, the trial court made no such factual finding. Additionally, Richards has not shown that the railroad would not allow him to traverse the railroad tracks located on his own property; therefore, he has not shown that he cannot reach the river frontage from the river bluff portion of his property, which gives him access to a public highway. Because it is possible that Richards could receive permission from the railroad to traverse the railroad and reach the river frontage over his own property, the trial court could reasonably conclude that it would be inequitable to burden the Petersons with a mile-long easement.

Finally, the requested easement over the Petersons' property necessarily includes a right to use a railroad underpass. The Petersons contend that the only right they could grant Richards concerning the railroad underpass is to water livestock, while Richards maintains that the right includes much broader

rights than watering livestock. Thus, the parties dispute the nature and scope of the right to use the railroad underpass. Richards did not seek to join the railroad as a party, however. Under § 803.03(1), STATS., a party must be joined if in the parties' absence, complete relief cannot be accorded among those already parties or if the disposition of the action in the person's absence may as a practical matter impair or impede the absent parties' ability to protect that interest.

Here, because of Richards' failure to join the railroad as a party, disposition of his case will not effectively and completely adjudicate the dispute because the railroad has a fee simple interest in a portion of the requested easement. If one or more of the tests in § 803.03(1), STATS., are satisfied, the absentee must be joined as a party if subject to service of process. Because the railroad was not joined as a party to the dispute concerning the easement to river frontage, the trial court correctly refused to grant an easement crossing the railroad's property.

We also reject Richards' contention that the trial court's decision deprives him of his riparian rights. A riparian owner is one who holds title to land abutting a body of water. *See Stoesser*, 172 Wis. 2d at 665–66, 494 N.W.2d at 207. Riparian owners have certain rights called riparian rights, which are based on title to the ownership of the riparian land. *Id.* As the Petersons point out, Richards is in the exact position as any other riparian owner bordering the Mississippi River; Richards is subject to the railroad's property and must make accommodations with the railroad.

In summary, because the trial court reasonably exercised its discretion when deciding whether to grant or deny the requested relief for an easement of neces-

sity over the Petersons' and railroad property, we affirm the court's denial of an easement of necessity to the river frontage portion of Richards' property. But we reverse that portion of the judgment denying the use of utilities along the river bluff easement and remand the matter for further proceedings to determine a reasonable use of utilities and the width of the granted easement of necessity.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions. Costs denied to both parties.

HOOVER, J. *(concurring)*. I concur with the result, but write separately to express my concern over the court's statement that a request for an easement of necessity sounds in equity. I tend toward the conclusion, without finally determining, that these cases do not turn upon equitable principles. This case may be resolved without extending the analysis to reach the majority's conclusion, and whether an action to declare a way of necessity is equitable was not squarely briefed. Because the issue was not fully addressed in the briefs, I would prefer to see this case resolved on a narrower issue.[1] I would simply decide section three of the majority opinion on the basis that Richards failed to prove unity of title with the railroad[2] and Peterson properties. Alternatively, I specifically join in the majority's determination that the railroad was a necessary party and that failure to join it prevented

---

[1] An appellate court should decide cases on the narrowest possible grounds. *State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44, 46 (1997).

[2] Bear in mind that it is the railroad's property, owned in fee simple, that immediately landlocks Richards' property.

Richards from proving that the river front property is truly landlocked, assuming access from the bluff.[3]

By characterizing an action to establish an easement of necessity as equitable, the majority provides trial courts with discretion to deny the easement even when the elements necessary to establish the way have been met. Thus, if the trial court finds both unity of title to the parcels and that the subject property is landlocked, it then weighs the benefit of conferring a way to the dominant estate against the burden such an easement would impose on the servient estate. If the benefit does not overcome the burden, the property may remain landlocked.

In my view, the flaw in the majority's analysis is its reliance upon *Ludke* for the proposition that easements are established in equity.[4] *See Ludke v. Egan*, 87 Wis. 2d 221, 274 N.W.2d 641 (179). *Ludke* does not say this.[5] No Wisconsin case does. What they *do* say is: "an easement of necessity is *created by the sale* of a landlocked parcel over the seller's land." *Ruchti v. Monroe*,

---

[3] Richards asserted at oral argument that the area between the bluff and the railroad's property cannot be traversed. While this may be a matter of fact, it is not a fact of record. I also note that the issue of access from the Mississippi River was not raised in the trial court.

[4] In response to this concurrence, the majority has withdrawn its express reliance on *Ludke* for the proposition that an easement of necessity sounds in equity. *See Ludke v. Egan*, 87 Wis. 2d 221, 274 N.W.2d 641 (1979). Because the proposition itself has not been withdrawn, one might infer that the majority continues to rely on that decision, albeit tacitly. While not necessarily a satisfying inference, it would seem preferable to concluding that the majority makes this pronouncement of new law without any supporting evaluation whatsoever.

[5] Indeed, neither the word "equity" nor "equitable" appears in *Ludke*.

83 Wis. 2d 551, 556, 266 N.W.2d 309, 312 (1978) (emphasis added); "[a] way of necessity typically arises where an owner [severs] a landlocked portion of his property by conveying such parcel to another. *Backhausen v. Mayer*, 204 Wis. 286, 234 N.W. 904 (1931). The way is implied over the land retained by the grantor." *Ludke*, 87 Wis. 2d at 229–30, 274 N.W.2d at 645. "The Ludke property was originally part of the Micke farm and *when it was sold* as a landlocked parcel of real estate, a way of necessity *thereby* came into being." *Id.* at 231, 274 N.W.2d at 646 (emphasis added).

These authorities, along with others, suggest that the easement, assuming no evidence of a contrary intent,[6] arises by operation of law at the moment a common owner isolates a parcel through a sale.

> A way of necessity is an easement founded on an implied grant or implied reservation. [Citing, *inter alia, Miller v. Hoeschler*, 126 Wis. 263, 105 N.W. 790 (1892), *overruled in part on other grounds by Prah v. Maretti*, 108 Wis. 2d 223, 321 N.W.2d 182 (1905).] It arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road . . . .

25 AM. JUR. 2D *Easements and Licenses* § 36, at 606–07 (1996).

> A way of necessity results from the application of the presumption that whenever a party conveys

---

[6] In some jurisdictions, a way of necessity is implied regardless of the grantor's true intent, whereas in others the implication will not be made where it is shown that it was not intended. *See* 25 AM. JUR. 2D *Easements and Licenses* § 37 (1996). This issue does not appear to have been addressed in Wisconsin.

property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. Such a way is of *common-law* origin, and is presumed to have been intended by the parties.

25 AM. JUR. 2D, *supra* § 37, at 607–08 (emphasis added); *see also* 25 AM. JUR. 2D, *supra* § 2, at 571: "An easement is not a lien or an equity."

Certainly, the trial court has discretion to declare the location and scope of an easement of necessity once the elements for its existence have been proven. But once proven, there is a compelling argument to be made that the court's discretion is limited to location and scope. It cannot deny what exists in the land. It seems likely that the court's authority merely defines, but does not weigh, the burden that the grantor placed upon the retained parcel by landlocking property. As indicated, however, because the briefs did not fully and specifically explore the matter, I am not prepared to make this pronouncement any more than I can embrace the majority's conflicting conclusion.